#### In re ARCHER.

1. CRIMINAL LAW—GRAND JURY—CONTEMPT—PUBLIC POLICY.

   Public policy does not prevent a grand jury from reporting to the court the nature of its proceedings for the purpose of having a witness who refused to produce his books and papers before the jury punished for contempt. *People* v. *Lauder,* 82 Mich. 109, and *People* v. *Thompson,* 122 Mich. 411, distinguished.

2. CRIMINAL CONTEMPT—WRITTEN INTERROGATORIES.

   In proceedings for a criminal contempt under 1 Comp. Laws, § 1098, the respondent is not entitled to have written interrogatories furnished, and time to answer.

3. WITNESSES BEFORE GRAND JURY—BOOKS OF ACCOUNT—COMPETENCY.

   On the hearing in *habeas corpus* proceedings for the discharge of a witness who has been committed for contempt in refusing to produce his books of account before the grand jury, the court will not presume that there are no entries in the books which might be proper evidence against any other person than the witness.

4. SAME—PRACTICE.

   The proper practice in such case would be for the witness to produce his books before the grand jury, and, when requested to exhibit them, raise the question of competency, and have it determined by the court, if necessary.

*Certiorari* to Wayne; Donovan, J. Submitted September 11, 1903. (Calendar No. 20,136.) Decided September 15, 1903.

*Habeas corpus* proceedings and *certiorari* by John Archer to vacate an order of commitment for contempt of court. Petitioner remanded.

*Flowers, Moloney & Bishop,* for petitioner.

*Ormond F. Hunt,* Prosecuting Attorney, for the people.

MONTGOMERY, J.   The petitioner has sued out a writ of
*habeas corpus* and *certiorari* to review the action of the
circuit court for the county of Wayne in committing him
to the custody of the sheriff for a contempt of court in
refusing to produce his books and papers before the grand
jury now in session in said court.   Briefly stated, the pro-
ceedings in which the contempt was adjudged were as
follows:   The grand jury made a report that the witness
was required to appear before them under a subpœna
*duces tecum*, and was called upon to produce his books,
checks, receipts, bills, invoices, etc., showing his transac-
tions with the city of Detroit and the department of public
works of said city, whether in his own name or in the
name of himself and others, between the 1st day of Janu-
ary, 1901, and the 1st day of July, 1903; that he appeared
before such jury, but refused to produce the books, not,
however, claiming any privilege on the ground that any-
thing contained in them would tend to incriminate him,
but placing his refusal upon the ground that he was not
compelled to produce them.   Acting upon this report of
the jury, the court made an order to show cause why he
should not be punished for contempt.   This writ was
returned, and, before later proceedings, notice was served
upon him to appear before the court, and produce the
books and papers to be used before the grand jury.   This
he failed to do, and on the 4th of September he was
adjudged guilty of contempt in failing to obey the subpœna,
and in failing to obey the order of the court; he having
appeared before the court on the 4th, and having refused
to produce his books before the grand jury.

It is urged in this court that the proceedings are irregu-
lar and invalid, for the reason that the report of the grand
jury divulged the nature of the proceedings before them,
and that public policy does not admit of the grand jury
stating such facts publicly, and spreading them upon the
court records.   A discussion of this question might per-
haps be avoided, inasmuch as there was a direct refusal
to obey the court order of like character; but as the ques-

tion is of some importance, and as the ruling of this court in the two cases of *People* v. *Lauder*, 82 Mich. 109 (46 N. W. 956), and *People* v. *Thompson*, 122 Mich. 411 (81 N. W. 344), appears to have been misapprehended, we take the occasion to say that we do not think the rule of public policy prohibiting a disclosure by a grand juror of facts coming to his knowledge while a member of the grand jury is to be so construed as to block the wheels of justice, and bar the grand jury from compelling, through the instrumentality of the court, a recalcitrant witness from obeying the mandates of the court. The grand jury is an arm of the court, but it is without power to enforce its own process by its own mandate. How, then, shall a witness who refuses to answer a question before a grand jury be dealt with? It is very clear that it must be made known to the court that the witness has refused to comply with the court's mandate before the court can act. There are only two ways that this might be done, and that is either by a report of the grand jury to the court, or by an affidavit of some one of the grand jurors or the prosecuting officer. Section 11887, 3 Comp. Laws, relates to the testimony of grand jurors upon trial, and was not intended to prevent such information being conveyed to the court itself as that embodied in the present report. A very well reasoned and instructive case upon this subject is *Heard* v. *Pierce*, 8 Cush. 338 (54 Am. Dec. 757), in which cases are cited which fully sustain the right of the grand jury to take the steps taken in this case; and there is nothing in the decisions of the *Lauder* or *Thompson* cases which, in our judgment, militates against these holdings.

Acting upon this information, the respondent was required to appear and show cause, and, in addition to this, was, by express order of the court, required to produce the books before the jury, and refused to do so. He complains of the practice, and says he should have had the opportunity of having interrogatories furnished and given time to answer. He bases this contention upon section 10909 of the Compiled Laws, which is a section of the chapter

relating to attachments to enforce civil remedies. The present is a criminal contempt, and comes within the provisions of section 1098, 1 Comp. Laws. The practice was not irregular in requiring immediate obedience to the order of the court.

It is next urged with considerable force that as the report of the grand jury shows that the jury are not attempting to indict or proceed against Archer himself, and there is no claim that the books and papers required to be produced are evidence against him, the evidence sought is immaterial and incompetent, as it is said the books of account may not be used in evidence against any other person. It is to be noted that the books are not produced in answer to the subpœna, and the question then raised as to particular items, nor does the case present any question as to whether the books of account are sought to be used against any other than John Archer, who might be entitled to the protection of the court; but we are asked to say, as matter of law, that under no circumstances could these books of account, or any entries in them, be any evidence of competent facts against any other person than John Archer. Apart from the fact that the proper practice has not been pursued by petitioner, we are not prepared to say, as matter of law, that there may not be entries in the books which might be proper evidence as against parties other than petitioner. This could only be shown by an inspection of the books. It is due to the petitioner that it should be stated that his counsel offered to produce the books, and permit an inspection by the trial judge, on condition that portions of books immaterial to the issue before the grand jury should be sealed up, and only such parts submitted as had a bearing upon the questions under consideration. The proper practice for the petitioner to pursue is to produce his books before the grand jury, and, upon being requested to exhibit any one of the books or vouchers, raise the question of materiality, and then have it determined by the court, if necessary.

The application for discharge on *habeas corpus* will be denied, and the petitioner remanded to the custody of the sheriff.

Hooker, C. J., Carpenter and Grant, JJ., concurred. Moore, J., did not sit.