PEOPLE v. REIGEL.

1. GRAND JURY — AUTHORITY OF COURT — CONSTRUCTION OF STATUTES.

2 How. Stat. § 7562, which provides for the drawing of grand juries at least 14 days before term, and section 9554, which provides that grand juries "shall not hereafter be drawn," unless upon written order of the judge of the court, filed with the clerk, are not to be construed as limiting the power of the court under 2 How. Stat. § 7578, in relation to the calling of grand juries during term, but, rather, as extending it, by permitting the judge at chambers to make an order for a grand jury if he thinks one necessary.

2. SAME — ORDER FOR — FILING WITH CLERK.

An order for a grand jury, entered on the journal and signed by the judge of the court, is in substantial compliance with 2 How. Stat. § 9554, requiring such orders to be in writing and filed with the clerk.

3. SAME — LOCALITY FROM WHICH DRAWN — SPECIFICATION.

2 How. Stat. § 7578, providing that when, for any cause,

grand jurors have not been summoned, or a sufficient number of qualified jurors fail to appear, the court may order a sufficient number to be drawn and summoned, and direct from which townships or supervisor districts they shall be drawn, does not contemplate that the direction of the locality from which to draw shall only be made after the grand jury has been drawn from the "body of the county" in the first instance, but permits it to be made prior thereto, where grand jurors have not been summoned.

4. SAME—LEGAL JEOPARDY—WHEN ARISES.
Legal jeopardy is not involved in grand jury proceedings; beginning only when the accused is placed on trial before a petit jury.

5. SAME—INDICTMENT—MOTION TO QUASH—OBJECTIONS AVAILABLE.
On motion to quash an indictment, no objection to the composition of the grand jury is available other than those to which, under the statute (2 How. Stat. §§ 9496, 9497), the accused is limited when held to answer to such jury, viz., that a juror is prosecutor or complainant in a charge against him.

6. SAME.
The objection that a grand jury was procured irregularly, and to the prejudice of the accused, should be addressed to the discretion of the court, which has the same power to set aside the proceedings that it has to vacate the verdict of a petit jury.

7. APPEAL — REVIEW OF DISCRETIONARY ACTION — PRESUMPTION OF HONESTY.
The Supreme Court will presume that questions addressed to the discretion of the trial court were honestly decided, and will not interfere unless abuse of discretion clearly appears.

8. COUNTY TREASURERS—SALARIES—BOARDS OF SUPERVISORS.
Under 1 How. Stat. § 527, providing that the county treasurer shall receive such compensation as the board of supervisors shall deem reasonable, the compensation need not be fixed at a definite sum in dollars and cents, but prospective office charges may be included in the salary allowed; and this rule is not affected by section 508, providing that the annual salaries of county officers shall be fixed by the board prior to their election, and shall not be increased or diminished during the terms for which they shall be elected.

Exceptions before judgment from Bay; Maxwell, J. Submitted February 10, 1899.    Decided April 25, 1899.

Michael Reigel was convicted of embezzlement. Reversed.

*T. F. Shepard* (*J. C. Weadock* and *J. E. Simonson*, of counsel), for appellant.

*Horace M. Oren*, Attorney General, and *Isaac A. Gilbert*, Prosecuting Attorney, for the people.

HOOKER, J.   The defendant was convicted of the offense of embezzlement, upon the following state of facts: He was treasurer of Bay county, having been elected in 1894.   At its October, 1894, session, the board of supervisors adopted the report of its committee on ways and means, which, so far as applicable to this case, was as follows:

"To the Honorable Board of Supervisors of Bay County.
"*Gentlemen:*  Your committee on ways and means, to whom was referred the matter of the salaries of the county officers, have had the same under consideration, and would recommend that the salaries of the various county officers be as follows for the next two ensuing years:   For county treasurer, $3,800, and collection fees on liquor and other taxes."

Acting in conformity to this resolution, the defendant drew from the treasury the sum of $3,800 yearly, and at the end of each year of his term drew the collection charges, the same being audited and allowed by the board of ·supervisors.   Orders were drawn by the county clerk for the amounts.   The prosecution rested upon the claim that he was not entitled to the collection charges under the law, and that, as he was bound to know the law, his act necessarily constituted embezzlement.

At the March, 1898, term of the circuit court, the following order was made and entered in the journal·

"At a general term of the circuit court for the county of Bay, commenced and held at the court-house in Bay City, said county, on Monday, March 7th, A. D. 1898. Present: Hon. A. C. Maxwell, circuit judge.   Court opened for business in due form.

"In the matter of drawing and summoning a grand jury.

"No grand jury having been drawn and summoned for the present term of this court, and it appearing to the court that there is reason for the summoning of a grand · jury, thereupon it is ordered that a grand jury be drawn and summoned forthwith, such jurors to be drawn from the cities of Bay City and West Bay City, and the townships of Bangor, Frankenlust, Hampton, Kawkawlin, Merritt, Monitor, and Portsmouth.

"Thereupon court adjourned until Wednesday, March 9th, A. D. 1898, at 8:30 a. m.

"Read, approved, and signed in open court.
                    " A. C. MAXWELL, Circuit Judge."

A grand jury was drawn in conformity to such order, summoned, and impaneled, and the indictment upon which the conviction was had was found. Upon his arrest, the defendant, through counsel, moved to quash the indictment upon the ground that the grand jury was not legally constituted, for the reason that it was not drawn under a written order, signed and·filed in conformity to 2 How. Stat. § 9554, which reads as follows: " Grand juries shall not hereafter be drawn, summoned, or required to attend at the sittings of any court within this State, as.provided by law, unless the judge thereof shall so direct by writing under his hand, and filed with the clerk of said court; " and for the further reason that said jury was not drawn from the whole county. This motion was by stipulation to be given the effect of a plea in abatement, should that be held the necessary practice. The court denied the motion, and proceeded to try the defendant.

The evidence showed that the collection charges consisted of the 4 per cent. collection fee provided by statute. The court held that "the effect of this resolution was to fix the salary of the treasurer at $3,800 and the collection fees of liquor taxes, given to treasurers by statute, and it was void as to the 4 per cent. collection fees on taxes collected," and directed the jury to find a verdict of guilty. The defendant has assigned error. The questions dis-

cussed rest upon the following propositions, asserted upon the defendant's behalf:

1. The indictment should have been quashed.

2. The court erred in directing a conviction, because the resolution was valid, and gave the defendant the right to receive the sums taken.

3. In any event, the court should have submitted the question of criminal intent to the jury.

In 1859 the common practice of indicting, through a grand jury, was superseded by that of filing informations (2 How. Stat. chap. 334); and, by section 9554, the grand jury was dispensed with, except in cases where specially ordered. It is contended that this section should be held mandatory, and strictly construed, in connection with section 7562, which provides for the drawing of grand juries by the clerk at least 14 days before term. It is said that the effect of these sections is to require the written order of the judge to be filed at least 14 days before term. Section 7562 was originally designed to prescribe the method of drawing grand juries when they were a regular appendage of the court, and its substance will be found in Rev. Stat. 1846, tit. 22, chap. 103, § 16. Section 9554 appears to have been required to prevent the continuance of the former practice of drawing and impaneling grand juries under chapter 263, of which 7562 is a section. We are not satisfied that it was intended to limit the power of the court in relation to the calling of grand juries during term, but think, rather, it was intended to extend it, by permitting the judge at chambers to make an order for a grand jury if he should think a grand jury necessary, that it might be seasonably drawn in the usual way, which, under the former practice, required no order.

2 How. Stat. § 7578, reads as follows:

"Whenever, for any cause, grand or petit jurors shall not have been drawn and summoned to attend any circuit court, or a sufficient number of qualified jurors shall fail to appear, such court may, in its discretion, order a sufficient number of grand or petit jurors, or both, to be

forthwith drawn and summoned to attend such court: *Provided*, that in drawing jurors under this section the court may, for the purpose of obtaining a jury or talesmen near the county seat, direct from which townships or supervisor districts such jurors shall be drawn."

Such a construction of these statutes as is urged upon us would disregard section 7578, which was an old statute (see Rev. Stat. 1846, tit. 22, chap. 103, § 32), and one that is inconsistent with the claim that the circuit court, when in session, cannot order a grand jury for that term. The last-mentioned section, as it stood when section 9554 was passed, conferred such power upon the court in case a grand jury had not been drawn or summoned, and it was deliberately re-enacted, with amendments, subsequent to the passage of section 9554, without attempting to correct the incongruity which the construction contended for suggests. We see no necessity for such construction, and think it would be against public interest, and contrary to the uniform practice that has prevailed under section 7578. The order in this case was a formal court order, and it is over the signature of the judge, and therefore a substantial compliance with section 9554, if that section should be considered applicable to orders made in court, which we do not decide.

The order, in this instance, specified the townships from which the grand jurors were to be summoned, as provided in section 7578, and they were summoned from seven townships only. The constitutionality of this statute is not attacked, but it is urged that the theory of the law has always been to draw the grand jury from the "body of the county" in the first instance, and that talesmen, or jurors to complete a panel or supply a deficiency, merely, have been permitted to be taken from a particular township or city, and that we should limit the application of this statute to cases where a jury has been drawn, or at least ordered, and not summoned, or some of the jurors have failed to appear. The act is broad in its terms, and seems to cover any and all cases where, for any cause,

such jury shall not have been summoned. In a case where a jury has been regularly drawn, but not summoned, the consequences of an order similar to that complained of would be as serious as though no jury had been drawn, yet such a case would unquestionably be within the statute. Why, then, should we place a strained construction upon it? It is true that the laws have attempted to accomplish an equal distribution of jury duty throughout the county, but such distribution is not a matter upon which the validity of the proceedings depends. There is nothing in our Constitution to prohibit the legislature from regulating the practice by grand jury, any more than that by complaint and examination by a magistrate. Jeopardy does not begin until the accused is put upon trial before a petit jury. It was therefore within the power of the legislature to provide that a grand jury might be summoned from any portion of the county, either in case of emergency or in the first instance.

Sections 9496 and 9497, 2 How. Stat., are copied from the statute of New York. They are as follows:

"SEC. 9496. A person held to answer to any criminal charge may object to the competency of any one summoned to serve as a grand juror, on the ground that he is the prosecutor or complainant upon any charge against such person; and if such objection be established, the person so summoned shall be set aside.

"SEC. 9497. No challenge to the array of grand jurors, or to any person summoned as a grand juror, shall be allowed in any other case than that specified in the preceding section."

If at the common law the accused had the right to challenge a grand juror, or the array, in proper cases (which seems to be doubted in *People* v. *Lauder*, 82 Mich. 138), our statute has forbidden this, except upon certain specified grounds; and it would seem to follow that an objection which would not support a challenge could hardly suffice upon a motion to quash the indictment. This is indicated by Mr. Justice MORSE in his opinion in the case of *People* v. *Lauder*, 82 Mich. 134, where he says that one having

no opportunity to interpose a challenge has the right to raise, either by plea in abatement or motion to quash, the same objections to the grand jury that a person under accusation at the time that it was impaneled might have interposed, *but no other.* In *People* v. *Smith,* 118 Mich. 73, it is said that "an objection prohibited by the statute when the grand jury is impaneled cannot be valid when the party is put upon trial under the indictment found." In *People* v. *Lauder, supra,* these sections were passed upon. It was there said (page 134) that—

"The decisions in other States throw no particular light on this question, when we consider these statutes, except in States having similar laws. It was evidently intended by the legislature that no mere technicalities or irregularities should be permitted to quash the grand-jury panel, and that only in case of a prosecutor or complaining witness being summoned could the accused person successfully complain and exercise the right of challenge. And, certainly, if a person under accusation and arrest, and about to have his case submitted to the grand jury, could interpose but this one objection to the formation of the grand jury, he would not be permitted, after indictment found against him by such grand jury, to have such indictment quashed for any incompetency of a grand juror, or any irregularity in the selection or formation of the jury, which he could not raise before the jury was sworn. Such a holding would be nonsensical, and entail needless expense. And Lauder must stand in the same position. He can have no advantage over one who might have been under accusation and arrest at the time of the impaneling of the jury.

"I am satisfied that the legislature has wisely ordained that no inquiry for the purpose of quashing an indictment shall be made into the composition of a grand jury, or as to the competency of the individual jurors, except in cases where some member has been the prosecutor of, or the complaining witness against, the person indicted. It must be remembered that the grand jury does not settle the guilt or innocence of the accused, but acts something the same as does an examining magistrate. No irregularities in the examination of an accused person before a magistrate are permitted to quash an information filed in the circuit court against him, and based upon such exam-

ination. The admission of incompetent evidence, or the rejection of proper testimony, by the justice of the peace, or other person holding such examination, has no effect upon the information. This proceeding to find an indictment before a grand jury, or to bind an accused person over to the circuit court by a justice of the peace, is but the presentment of a case to be tried before a petit jury, and the proceeding is not to be governed by any mere technicalities, as long as the substantial rights of the accused to a speedy and fair trial before a jury of his peers is preserved and remains to him. In a case where a grand jury was impaneled without any jurisdiction whatever, or fraudulently, or in willful disregard of the law and the rights of the accused, or when substantial injustice was shown to have been done him by any of the proceedings in organizing the grand jury, or by the proceedings before it after it was organized, it would be the duty of the court, upon proper showing, to quash the indictment."

While the language quoted is from a dissenting opinion, it was concurred in by the entire bench, as appears from the majority opinion (see 82 Mich. 111), and was necessary to the decision of the case. Mr. Justice MORSE cites cases of similar import from several States. 82 Mich. 138. In addition, we refer to the following: *People* v. *Smith*, 118 Mich. 73; *People* v. *Petrea*, 92 N. Y. 142; *People* v. *Hooghkerk*, 96 N. Y. 158; *U. S.* v. *Reed*, 2 Blatchf. 435; *U. S.* v. *Tallman*, 10 Blatchf. 21.

The case of *State* v. *Noyes*, 87 Wis. 340 (41 Am. St. Rep. 45), is in point upon this question. It holds that a grand jury assembled under color of law is a *de facto* grand jury, and an indictment found by such jury cannot be attacked upon the ground that it was not found by a lawfully constituted jury, but that the proceedings of such a jury are valid, the same as are those of a court presided over by a *de facto* judge. In *People* v. *Petrea*, 92 N. Y. 128, an indictment for larceny was found by a jury drawn under a void statute, but the indictment was sustained, upon the ground that "the jury was a *de facto* jury, selected and organized under the forms of law." A similar holding was made in *People* v. *Fitzpatrick*, 66 How.

Prac. 14. In *People* v. *Dolan* it was not known who drew the jury, but the court said:

"It is sufficient to maintain the authority of the grand jury to investigate criminal charges, and find indictments valid in their nature, that the body acted under color of lawful authority." *People* v. *Dolan,* 6 Hun, 232, 64 N. Y. 485, 493.

See, also, *In re Gannon,* 69 Cal. 541; *Ex parte Haymond,* 91 Cal. 545; *State* v. *Belvel,* 89 Iowa, 405 (27 L. R. A. 846); *Ex parte Springer,* 1 Utah, 214.

Missouri has a statute similar to our own. In discussing it, the supreme court of that State said, in the case of *State* v. *Bleekley,* 18 Mo. 430:

"In early days, in this State, it was common for the courts to grant new trials in criminal cases on account of some disqualification of jurors. Frequently after undergoing the labor and expense of a trial, lasting for days, and after a verdict of guilty was found, a new trial was ordered because the prisoner had discovered that one of the jurors was an alien. The legislature determined to put a stop to this practice. * * * The defendant is not permitted to question the manner of summoning the grand jury. Such a cause, on such a subject, is not one of the statutory objections allowed to grand juries or to a grand juror in our courts, and none other can avail."

It does not follow that a meritorious question, arising out of proceedings of the grand jury, or irregularities in its procurement, cannot be reached. They are always within the discretion of the trial judge, who has the power to set aside the proceedings, as he may vacate the verdict of a petit jury, on motion. In *Gibbs* v. *State,* 45 N. J. Law, 379 (46 Am. Rep. 782), the adequacy of such remedy receives the following cogent vindication:

"Nor in abstract speculation would an argument of any force arise from these premises that the remedies thus provided are so utterly insufficient and unreasonable that it must be presumed that a further remedy exists. For my part, I can see no force whatever in such a suggestion. In the first place, we are to remember that the right in question, and which, in some measure, the law should

assuredly secure to the party, is not one that can be called an essential or fundamental right. It is not one necessary for the security of the person, life, or property. The requisite that an accusation of this nature shall proceed from a grand inquest is the provision which the law makes against frivolous or malicious public criminations. The safeguards to such provisions, as I have said, consist in the right to challenge the grand jury and the right to move the court to set aside the proceedings. Are such safeguards unreasonably deficient? I am at a loss to see how any one can so consider. If a man is tried for his life, and is convicted, and he then discovers that by the malice of the summoning officer the jury has been packed, and the trial has been a scheme to take his life, what remedy does the law give him in such an extremity? Absolutely none, but an application to the discretion of the court to set the proceedings aside; and yet it is argued that this same remedy is inadequate in its application to a similar proceeding on the part of a grand inquest. I must repeat that I cannot concede that a right to put in the plea in question belongs to the defendants *ex debito justitiæ*."

In *U. S.* v. *Reed*, 2 Blatchf. 449:

"These objections, however, to the proceedings in the selection and summoning of grand jurors, over and beyond the right of challenge, are presented to the court for the exercise of its sound discretion. It will, therefore, look into the facts presented, on which a charge is made against the regularity of the proceedings in the selection and summoning of grand jurors in a given case, and will hear the explanations on the other side, and its judgment will be determined accordingly. If it sees that there has been improper conduct in the public officers, which has resulted prejudicially to the party accused, it is bound to set aside all the proceedings. On the contrary, although there may be technical objections to the proceedings in point of strict regularity, yet, unless the court is satisfied that they have resulted, or may result, to the prejudice of the party accused, it will not set them aside, because its interposition in the case will not be required on the ground of justice either to the accused or to the public."

Similar language is used in the case of *People* v. *Lauder*, 82 Mich. 138, and would seem to imply that, like

other questions addressed to the discretion of the trial judge, the decision is not subject to review; certainly not, unless in cases of clear abuse. The presumption of the law is that the trial court is competent, and disposed to do justice, and its decision of questions addressed to its discretion should not usually be considered by superior courts. Under the pressure of hard cases, some of the appellate courts of this country have assumed to do so, and, when this is once done, it is afterwards difficult to avoid it, until it becomes a common thing to review discretionary action wherever there is a suspicion of injustice. It is destructive to the dignity and independence of the trial court, and it may be doubted if it is not productive of more injustice than good. It is urged in this case that the trial judge has sought to accomplish the indictment of a large number of innocent persons, through a grand jury who, from the proximity of the residence of its members to the county seat, are alleged to have been prejudiced against them. We can presume neither the one thing nor the other. So long as no error of law is found, we cannot overturn the decisions of courts upon the ground that the judges have erred in judgment or motive. With other prosecutions we have nothing to do upon this record. So far as the indictment is concerned, it appears to have been found by a jury of qualified persons, and the objection to the constitution of the jury is purely technical.

Section 527, 1 How. Stat., provides that—

"The county treasurer shall receive for his services such compensation as the board of supervisors shall deem reasonable, to be allowed and ordered by them."

This is an old statute, and under it this court has held that the amount of compensation need not be fixed at a definite and specified sum in dollars and cents, and that it was competent for the board of supervisors to make prospective office charges a portion of the salary allowed, by a resolution reading as follows: "*Resolved,* that the salary

of the county treasurer for the present year be fixed at
$1,500, and that he be allowed his ordinary office charges
in addition." *People* v. *Clerk of Board of Sup'rs, of
Bay Co.*, 38 Mich. 307. Counsel for the people seem to
concede that this decision would require a reversal of this
case, but for the fact that, some two years after it was
rendered, the legislature passed an act in relation to the
fixing of salaries by the board, which is said to have been
"intended to overcome its effect." See 1 How. Stat. §
508. It reads as follows:

" The annual salaries of all salaried county officers
which are now, or may be hereafter by law, fixed by the
board of supervisors, shall be fixed by said board on or be-
fore the thirty-first day of October prior to the commence-
ment of the term of such officers, and the same shall not
be increased or diminished during the term for which such
officers shall have been elected or appointed."

We are not satisfied that it was intended to have the
effect stated, and think that it was intended to prevent
changes in salaries following the election of officers, be-
fore the beginning of or during their terms. We see no
reason for saying that it was intended to abrogate section
527, or to affect it, except as it forbids changes during an
official term. It is apparent that the amount of the
salary fixed in this instance was indefinite and uncer-
tain in a sense, because liable to be increased or dimin-
ished through variations in the amount of the collection
fees. But the statute was designed to prevent repeated or
untimely action by the board, and not to prohibit a
method of fixing the salary which should make the amount
contingent upon the work done, and which has already
been approved, provided the resolution fixing the salary
should state the rule by which the amount should be de-
termined.

Being unable to concur in the construction given to these
statutes, we cannot sustain the conviction. It is therefore
set aside, and, inasmuch as the authority to receive the
money appears from the record of the board of supervisors,

and cannot be successfully controverted, the defendant is discharged.

The other Justices concurred.