PEOPLE v EDMOND

Docket Nos. 78-1125, 78-1368. Submitted June 16, 1978, at Lansing.—
    Decided October 10, 1978. Leave to appeal denied, 405 Mich
    813.
At the request of the Ingham County Prosecutor, Honorable Jack
    W. Warren, Judge of the Ingham Circuit Court, ordered a
    grand jury summoned for the September, 1977, term. Honora-
    ble Michael G. Harrison was chosen by blind draw to be the
    supervising judge of the grand jury and was assigned to select
    it. The Ingham County Jury Board was never officially notified
    or informed of the existence of the grand jury.
    Judge Harrison obtained a group of 50 jurors derived from
    the September, 1977, petit jury panel from the court clerk's
    office in Lansing. Judge Harrison personally and privately
    conducted a voir dire of each of the members of this group. No
    record of these individual voir dires was made. He then person-
    ally selected, without a random or blind draw, the 17 persons
    who would compose the Ingham County Citizens Grand Jury.
    On December 15, 1977, the grand jury returned an indictment
    against 12 persons, charging 63 counts of violations of the
    Controlled Substances Act. The 12 persons indicted were Percy
    A. Edmond, Charles Pointer, Roosevelt Carson, William Carson,
    also known as William Carthen, Monroe McClurkin, Ralph
    Dennis Hopkins, also known as Denny, Herschel Walker, Larry
    Benson, also known as Bebop, Willie Jones, Samarai Hood, also
    known as Sam, James Giles, also known as Jimbo, and Butch
    Thomas.
    A preliminary examination was held on February 27, 1978.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 38 Am Jur 2d, Grand Jury §§ 12, 13.
[2] 38 Am Jur 2d, Grand Jury § 13.
[4] 38 Am Jur 2d, Grand Jury § 9.
[5] 46 Am Jur 2d, Judges §§ 220-222.
[6] 38 Am Jur 2d, Grand Jury § 21.
[7] 47 Am Jur 2d, Jury § 230.
[8] 47 Am Jur 2d, Jury §§ 2, 139, 140.
[9] 38 Am Jur 2d, Grand Jury § 12.
[10] 47 Am Jur 2d, Jury § 316.

At that time several motions were heard by the examining magistrate, including a motion to quash the indictments because of the alleged improper selection of the grand jury. The testimony of 12 witnesses was heard, detailing the selection process used. After the hearing, the motion to quash was denied.

One of the defendants filed a "claim of appeal, motion for leave to appeal, for immediate consideration, and for stay of proceedings pending appeal" with the Ingham Circuit Court. This motion was assigned by blind draw to Honorable Thomas L. Brown. Another defendant filed a similar appeal with the Honorable Ray C. Hotchkiss, contesting the same ruling.

In the appeal directed to Judge Hotchkiss, the defendants sought to quash the indictment on the grounds that 1) two members of the County Jury Board failed to take the oath of office as required by statute, 2) the prospective grand jurors were improperly selected from a panel of prospective petit jurors, 3) the grand jurors were improperly selected and impaneled by the supervising judge, and 4) one juror was improperly allowed to sit as a grand juror and participate in the proceedings. Judge Hotchkiss granted the defendants' motion and quashed the indictment on the basis of the improper selection and impaneling of the grand jury by the supervising judge. The people appeal by leave granted. Defendant Percy A. Edmond and nine other defendants also appeal. The appeals were consolidated for hearing. *Held:*

1. It is not required that the final grand jury array be selected by random selection. The .applicable statute does not preclude reasonable selection by the supervising judge.

2. The circuit court erred in holding that mere judicial participation in the selection of a grand jury, absent bias or prejudice, violates constitutional due process.

3. There was no obligation for the supervising judge to make a record of his voir dire of the individual prospective jurors.

4. The failure of two members of the Ingham County Jury Board to take the oath of office before the presiding judge, upon their reappointment, was of a technical rather than fundamental due process nature, and is protected from challenge by statute.

5. The statutory provision that the names of prospective grand jurors be "drawn in the same manner and from the same source as petit jurors" contemplates the use of randomly selected petit jury candidates as the source of a grand jury array.

It does not require the compilation of a separate list of prospective grand jurors.

6. The fact that one of the jurors was a cousin to four of the witnesses called, by itself, should not operate as a disqualification of that juror.

The decision quashing the indictments is reversed.

1. Jury—Grand Jury—Selection of Grand Jurors—Statutes—Voter Lists.

A statute which provides the manner in which members of a grand jury are to be selected does not mandate that a jury board randomly select the final 13 to 17 persons ultimately chosen to sit on the grand jury, nor does it preclude reasonable selection by the supervising judge; a key number random selection from voter registration lists is the blind selection contemplated by the statute (MCL 600.1326; MSA 27A.1326).

2. Jury—Grand Jury—Constitutional Law—Due Process—Selection of Grand Jurors.

The exercise of individual judgment in the selection of grand jurors does not, standing alone, deny constitutional due process because a grand jury is an inquisitorial, informing and accusing body, and it is not a trial body or the ultimate fact finder.

3. Jury—Grand Jury—Selection of Grand Jurors—Discretionary Selection.

The selection of a grand jury is not an adversary proceeding as is the drawing of a petit jury in a contested trial; the mode of selecting a grand jury is a matter of statutory requirement, and state procedures which rely solely on discretionary selection by state officials, as opposed to random selection, have consistently been upheld by the United States Supreme Court.

4. Jury—Grand Jury—Selection of Grand Jurors—Constitutional Law—Due Process.

The fact that it is a judge, rather than some other state official, who exercises individual discretion in the selection of grand jurors, is not, absent discrimination, offensive to constitutional due process.

5. Judges—Constitutional Law—Due Process—Spectre of Judicial Manipulation.

Neither the Supreme Court nor the Court of Appeals has ever been willing to find the "spectre" of judicial manipulation or bias, without more, to be sufficient to establish a due process violation when reviewing the judicial and nonjudicial activities

of a judge; unsupported speculation and conjecture regarding judicial impropriety is not appropriate at any stage of appellate review.

6. JURY—GRAND JURY—SELECTION OF GRAND JURORS—VOIR DIRE OF JURORS—SUPERVISING JUDGE.

There is no obligation for a judge selecting a grand jury to make a record of his voir dire of the individual prospective jurors; as the accused have no right to subject a grand jury or grand jurors to a voir dire, they should not be permitted to indirectly challenge grand jurors for bias or prejudice through the voir dire of the judge who supervises a grand jury.

7. JURY—COUNTY JURY BOARD—OATH OF OFFICE—TECHNICAL DEFECT —STATUTES.

The failure of a member of a county jury board, who had taken the oath of office before a deputy clerk, to take the oath of office before the presiding judge upon reappointment constitutes a technical defect which is statutorily protected from challenge (MCL 767.13, 767.14; MSA 28.953, 28.954).

8. JURY—PETIT JURY—GRAND JURY—SELECTION OF JURORS—STATUTES.

The statutes which provide for the selection of jury panels make no distinction between the selection of petit jury panels and grand jury panels; therefore, a grand jury array drawn from a panel which was randomly selected from the voter registration lists would satisfy the statutory mandate that it be drawn in the same manner and from the same source as petit juries (MCL 600.1308, 600.1311, 600.1312, 600.1313, 600.1326; MSA 27A.1308, 27A.1311, 27A.1312, 27A.1313, 27A.1326).

9. JURY—GRAND JURY—PETIT JURY—SELECTION OF JURORS—RANDOM SELECTION—STATUTES.

It is not required that a separate list of prospective jurors be compiled for the selection of a grand jury because the use of randomly selected petit jury candidates was contemplated by the Legislature as the source of a grand jury array (MCL 600.1326; MSA 27A.1326).

10. JURY—GRAND JURY—DISQUALIFICATION OF GRAND JUROR—STATUTES.

The fact that a member of a grand jury was a cousin to four of the witnesses called by the grand jury, by itself, should not operate as a disqualification of that juror because only those interests defined by statute will disqualify a member of a grand

jury or vitiate an indictment returned (MCL 767.13, 767.14; MSA 28.953, 28.954).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney and *John E. Steele* and *Michael G. Woodworth,* Assistant Prosecuting Attorneys, for the people.

*Alan C. Harnisch,* for defendant Percy A. Edmond.

*Phillip K. Campbell,* for defendant Charles Pointer.

*W. Charles Kingsley,* for defendant Roosevelt Carson.

*Ronald C. Emerson,* for defendant William Carson.

*Kenneth A. DeBoer,* for defendant Monroe McClurkin.

*Raymond L. Scodeller,* for defendant Ralph D. Hopkins.

*Karl A. H. Bohnhoff,* for defendant Herschel Walker.

*Michael F. Walsh,* for defendant Larry Benson.

*Thomas A. Kulick,* for defendant Willie Jones.

*Thomas A. Bengtson,* for defendant Samarai Hood.

Amicus Curiae: *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney,

Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the Wayne County Prosecuting Attorney.

Before: D. E. HOLBROOK, P.J., and M. J. KELLY and P. J. MARUTIAK,* JJ.

## PROCEDURAL HISTORY

M. J. KELLY, J. Four different Ingham County Circuit Court Judges are woven into the background fabric of this action and we outline their respective roles before reaching the merits of this appeal.

On August 5, 1977, the Honorable Jack W. Warren, at the request of the Ingham County Prosecutor, ordered a grand jury summoned for the September, 1977, term, "in accordance with the statutes providing for the drawing of grand jurors".

On September 6, 1977, the Honorable Michael G. Harrison, who was chosen by blind draw to be the supervising judge of the grand jury and had been assigned to select it, issued an "amended order for summoning grand jury". Neither order was directed to, conveyed to or received by the Ingham County Jury Board (hereinafter Board), nor was the Board ever notified or informed of the existence of the grand jury.

Judge Harrison, sitting in the City of Mason, Michigan, obtained a group of 50 jurors derived from the September, 1977, petit jury panel from the court clerk's office in the Lansing City Hall Building. Over the next several days, he personally and privately conducted a voir dire of each of the members of this group. No record of these

* Circuit judge, sitting on the Court of Appeals by assignment.

individual voir dires was made. Judge Harrison then personally selected, without a random or blind draw, the 17 persons who compose the Ingham County Citizens' Grand Jury. On December 15, 1977, this grand jury returned an indictment against 12 persons, the defendants, charging 63 counts of violations of the Controlled Substances Act.

At the preliminary examination on February 27, 1978, several motions were heard by the examining magistrate, including a motion to quash the indictment because of the improper selection of the grand jury. The examining magistrate took the testimony of 12 witnesses concerning this motion and, after the hearing, denied the motions on March 2, 1978.

The testimony established that the Board, during its annual meeting in May, 1977, had compiled a first jury list by applying the "key number" to the voter registration lists supplied by the county clerk. Questionnaires were sent to the persons on the list. The Board then reviewed the questionnaires and excused those persons who were exempted by statute or otherwise unqualified. A second jury list, comprised of those qualified to serve as jurors, was then prepared. The Board subsequently compiled panels from the second jury list to serve as jurors for the September, October, November and December, 1977, terms. No separate drawing and listing of prospective grand jurors was ever prepared by the Board. It was from the September panel that the 50 persons who comprised the grand jury array were selected.

On the day the district court denied the motions, one of the defendants filed a "claim of appeal, motion for leave to appeal, for immediate consider-

ation, and for stay of proceedings pending appeal"
with the Ingham County Circuit Court, which was
assigned by blind draw to the Honorable Thomas
L. Brown. On the very next day, March 3, 1978,
another defendant filed similar appeal pleadings
with the Honorable Ray C. Hotchkiss, contesting
the same ruling of the examining magistrate as
the appeal filed and assigned the previous day to
the Honorable Thomas L. Brown.

In the appeal directed to Judge Hotchkiss, the
defendants sought to quash their indictment on
the grounds that: (1) two members of the County
Jury Board failed to take the oath of office as
required by statute; (2) the prospective grand ju-
rors were improperly selected from a panel of
prospective petit jurors; (3) the grand jurors were
improperly selected and impaneled by the super-
vising judge; and, (4) one juror (juror No. 7) was
improperly allowed to sit as a grand juror and
participate in the proceedings. The circuit court
quashed the indictment. In considering the first
two issues, it held that such failures to strictly
comply with the applicable statute did not affect or
threaten the due process rights of the defendants,
and thus, that these defects were properly entitled
to protection from challenge under the provisions
of MCL 767.13 and 767.14; MSA 28.953 and 28.954.
As to the fourth issue, the trial court held that, as
juror No. 7 was merely one of 17 grand jurors,
only nine of whom are needed to concur on issuing
an indictment, his participation in the proceedings
would not affect their outcome and, by itself, was
not grounds for quashing the indictments. As to
the claim that the grand jurors were improperly
selected and impaneled by the supervising judge,
the trial court held that constitutional due process
required some method of random selection of

grand jurors, and accordingly entered an order granting defendants' motion.

Other pertinent facts are contained in the statement of facts appended to Judge Hotchkiss's opinion and order of March 20, 1978, which was adopted by the people-appellants and accepted by the defendants with minor additions which are not significant in this appeal. The statement of facts of Judge Hotchkiss is attached hereto as Appendix A.

### JUDICIAL SELECTION OF THE GRAND JURY

The order of the circuit judge states several issues but observes that: "The most serious issue raised by the defendants regards the selection and impaneling of the Citizens Grand Jury by the supervising judge." Because this issue is determinative and since the other issues are pertinent only if the grand jury was properly impaneled initially, we address it first.

The Wayne County Prosecutor in an amicus brief attempts to raise a totally new issue regarding the authority of the circuit court to entertain an appeal from a district court decision on a motion to quash based on irregularity in the grand jury selection. In the brief it is claimed that, in effect, it is tantamount to review by one circuit court judge of the action of another in the latter's selection and supervision of a Citizens' Grand Jury. We decline to address that issue and treat this matter solely as a review of an appeal to the Ingham County Circuit Court from an adverse ruling of the examining magistrate.

The people assert that Judge Harrison's personal selection of 17 persons to serve as grand jurors does not impugn the validity of the Ingham County Citizens' Grand Jury. In making this argu-

ment, they place reliance on Chapter VII of the Code of Criminal Procedure, being MCL 767.1 *et seq.;* MSA 28.941 *et seq.* Chapter VII is captioned "Grand Juries, Indictments, Informations & Proceedings Before Trial". The circuit court found, and both sides concur, that, while some sections of Chapter VII relate to grand juries, no single identifiable statute provides any specific method for the exact procedural selection and impaneling of grand jurors. The prosecutor argues that it is therefore not necessary to select the jurors by lot or by blind draw so long as the supervising judge acted in good faith. There is no allegation or finding that the supervising judge acted other than in good faith.

The defendants, in attacking the validity of the Citizens' Grand Jury, rely on Chapter XIII of the Revised Judicature Act. That chapter was added in 1968 and is captioned "Jurors". MCL 600.1301 *et seq.;* MSA 27A.1301 *et seq.* Sections 1306, 1312 and 1326 refer to grand juries or grand jurors and § 1326 is of special significance; it states:

> "If a grand jury is ordered by the court, or required by statute, the board shall draw the names of a sufficient number of persons, as determined by the presiding circuit judge, to serve as grand jurors in accordance with the provisions of section 11 of chapter 7 of Act No. 175 of the Public Acts of 1927, as amended, being section 767.11 of the Compiled Laws of 1948. *The names shall be drawn in the same manner and from the same source as petit jurors.* The term of service of grand jurors shall be as prescribed by section 7a of chapter 7 of Act No. 175 of the Public Acts of 1927, as added, being section 767.7a of the Compiled Laws of 1948." (Emphasis added.)

The reference to § 11 in the above quote refers to the Code of Criminal Procedure and appears at

MCL 767.11; MSA 28.951. It limits the grand jury to no more than 17 nor less than 13 persons. The defendants argue that a reading of the above statute in conjunction with GCR 1963, 511.1 requires that prospective grand jury names be drawn in the same manner as petit jurors, that is, it would require their selection by blind draw rather than by the personal voir dire of the supervising judge. GCR 1963, 511.1 provides for the selection of petit jurors as follows:

".1 Selection of Jurors.

(1) The clerk of the court shall deposit in a box separate slips containing the names of persons returned by the sheriff and not discharged or excused as prospective jurors by the court. The slips shall be folded to conceal the names contained thereon, and shall be intermingled after being deposited in the box.

(2) At every trial where any or all of the issues are to be tried by a jury, the clerk shall draw from the box a number of slips: (a) Sufficient to name a jury of 12 or more persons approved to sit as jurors in criminal cases or (b) sufficient to name a jury of 6 or more persons approved to sit as jurors in civil cases as provided by this rule.

(3) When the jury is impaneled, the clerk shall return all slips drawn from the box which contain the names of qualified persons not approved or sworn to sit as jurors at the trial.

(4) When the jury is discharged from the case the clerk shall return all slips which contain the names of the jurors so discharged.

(5) In a circuit having more than 1 judge trying jury cases at 1 time, the circuit judges may, by local rule, provide for drawing jurors from the Jury Box."

In ordering the indictments quashed, Judge Hotchkiss rejected the defendants' argument that § 1326 mandated a blind draw selection of the grand jury rather than selection by personal voir

dire of the supervising judge. The circuit court held that § 1326 required only that a separate list of prospective grand jurors be drawn by the jury board. However, the court did hold that some method of random selection was mandated under the due process provisions of the state and Federal constitutions, and, therefore, ruled that the method of selection used here denied the defendants' due process.

We agree with the circuit court's conclusion that the selection process outlined in § 1326 and GCR 1963, 511.1 does not render the indictment by the Citizens' Grand Jury invalid. We do not think that § 1326 incorporates the method of juror selection expressed in the court rule; the language of GCR 1963, 511.1(2)-(5) indicates that it is directed exclusively to the selection of petit, rather than grand, jurors. Furthermore, some judicial voir dire, some input in the selection, seems essential because it is highly unlikely that 17 jurors randomly selected could all be seated. Some would likely seek to be excused from the rigors of prolonged service (six months to one year, MCL 767.7a; MSA 28.947(1)). Moreover, the voir dire and exclusion of prospective grand jurors on the grounds of bias or prejudice are functions which the Board is not statutorily empowered to perform. We hold, therefore, that MCL 600.1326; MSA 27A.1326 does not mandate that the Board randomly select the final 13 to 17 persons ultimately chosen to sit on the grand jury nor does it preclude reasonable selection by the supervising judge. The key number random selection from the voter registration lists is the blind selection contemplated by § 1326. A wheel within a wheel is not required.

We disagree, however, with the circuit court's decision to quash the indictments on constitutional

due process grounds. In holding that the mere possibility of judicial bias or manipulation in the grand jury selection process constituted a valid reason to quash the indictments, Judge Hotchkiss raised to a level of constitutional due process a requirement unfounded in our case law or statutes.

The exercise of individual judgment in the selection of grand jurors does not, standing alone, deny constitutional due process. A grand jury is an inquisitorial, informing, and accusing body, and it is not a trial body or the ultimate factfinder. 8 Michigan Law & Practice, Criminal Law, § 141, p 213. The selection of a grand jury is not an adversary proceeding as is the drawing of a petit jury in a contested trial. In the absence of statutory direction or evidence of judicial manipulation, we are not prepared to create, as an element of constitutional due process, a requirement that grand jurors be selected in exactly the same fashion as petit jurors.

Historically, grand jurors have been selected with some relative degree of flexibility in the process. At common law, the sheriff drew them to his liking. 38 CJS, Grand Juries, § 9. Presently, in practically all jurisdictions, the mode of selecting a grand jury is a matter of statutory requirement and state procedures which rely solely on discretionary selection by state officials, as opposed to random selection, have consistently been upheld by the United States Supreme Court. In *Smith v Texas,* 311 US 128; 61 S Ct 164; 85 L Ed 84 (1940), for example, the court upheld a grand jury selection system whereby the appointed grand jury commissioners would jointly select 16 names from the county assessment rolls. Similarly, in *Carter v Jury Comm of Greene County,* 396 US 320; 90 S Ct

518; 24 L Ed 2d 549 (1970), the Court upheld against constitutional challenge the Alabama statutory grand and petit jury selection system which vested a large amount of discretion in state officials, even in the face of "overwhelming proof" that the officials had, in fact, abused their discretion by discriminating on the basis of race.

In addition, the fact that it is a judge, rather than some other state official, who exercises individual discretion in the selection of grand jurors is not, absent discrimination, offensive to constitutional due process. Many jurisdictions make provision for judicial input in the selection of grand jurors.[1] The grand jury selection process in Louisiana, for example, provides for the exercise of broad discretion by the judge and has been upheld as constitutional in *Eubanks v Louisiana,* 356 US 584; 78 S Ct 970; 2 L Ed 2d 991 (1958), where the Court stated:

"The method by which grand juries are selected in the parish is not controverted. A jury commission is required to select, 'impartially, from the citizens of the Parish of Orleans having the qualifications requisite to register as voters, the names of not less than seven

---

[1] The California Grand Jury system, for example, not only allows the court to interview and select grand jurors, but compels it. The California Penal Code, § 895 provides:

"During the month preceding the beginning of the fiscal year of the county, the superior court of each county shall make an order designating the estimated number of grand jurors that will, in the opinion of the court, be required for the transaction of the business of the court during the ensuing fiscal year as provided in Section 905.5."

§ 896 then states:

"(a) Immediately after such order is made, *the court shall select the grand jurors required by personal interview for the purpose of ascertaining whether they possess the qualifications* prescribed by subdivision (a) of Section 893. If a person so interviewed, in the opinion of the court, possesses such qualifications, in order for his name to be listed he shall sign a statement declaring that he will be available for jury service for the number of hours usually required of a member of the grand jury in that county." (Emphasis added.)

hundred and fifty persons competent * * * to serve as jurors'. Twice each year the Commissioners draw the names of 75 persons from this group. The list of 75 is then submitted to one of the six judges of the local criminal court who, in rotation, choose a new grand jury of 12 every six months. Obviously the judges have broad discretion in selecting from the list provided by the Commission. *State v Dorsey*, 207 La 928, 22 So2d 273. Several of them interview a substantial number of prospective jurors before making their choice. Others, including the judge who chose the jury that indicted petitioner, testified that they usually selected on the basis of personal knowledge or reputation in the community. Petitioner does not challenge this system of choosing grand jurors, as such, but he does contend that it has been administered by the local judges so that members of the Negro race have been systematically excluded from grand jury service." 356 US at 585–586 (Footnotes omitted.)

The circuit court, therefore, erred in holding that mere judicial participation in the selection of a grand jury, absent bias or prejudice, violates constitutional due process.

In the present case, there are no facts or allegations of fact indicating bias or prejudice with regard to the judicial selection of the 17 chosen grand jurors. Judge Harrison, the supervising judge of the Ingham County Citizens' Grand Jury, appeared before the district court to give testimony relevant to defendants' motion to quash. He explained that he was selected as the supervising circuit judge through the use of a blind draw. Judge Harrison said that at least 50 prospective grand jurors were brought before him. Each of the candidates was interviewed by the judge and it was only after all these interviews were completed that 17 individuals were chosen by him to sit as grand jurors. Judge Harrison testified in detail as to the criteria he applied in impaneling the jury:

"*Q.* Judge, could you tell the Court the factors you considered in your selection of the 17 people from the 50 people?

"*A.* Yes, sir. My objective or goal was to have a jury which, as much as reasonably possible, would represent a cross-section of the community. I was interested in age, sex, race, and ethnic background, educational background, employment. That was what I was striving for as far as trying to develop a jury of 17 individuals who could at least reasonably fairly represent a cross-section of the community. Now, in certain specifics, what I was looking for in 17 individuals who would represent this cross-section, were characteristics as far as general responsibility. The questions I would ask, for instance, were with respect to their employment record, if they had any reprimand for tardiness, problems with absenteeism. I talked to them about the importance of having the procedure—having those persons there during this process beginning on time, being there on time, and I was looking for, among other things, those characteristics because I realized that if we had problems with tardiness or absenteeism, it would substantially affect the ability of the Grand Jury to function."

Judge Harrison described the make-up of the grand jury as follows: Of the three blacks on the array, one was selected for grand jury service. Also on the grand jury is one Spanish surnamed person. The majority of the grand jurors are female; the age range is from 18–21 to 65 years old. The occupations of the jurors include laborers, factory employees, self-employed businessmen, State of Michigan employees, MSU employees, general commercial type employees and homemakers. One member is on public assistance and one member is a student. Geographically, approximately half of the jurors are from the City of Lansing, and half from the remainder of Ingham County, a split which corresponds to the population distribution in the county. Although defendants' counsel had a

full opportunity to question Judge Harrison and did in fact do so, none of them elicited any testimony or otherwise produced any evidence indicating that he had an improper motive or was swayed by personal bias in the selection process. In short, the record contains no indication of judicial impropriety, and indeed, plainly refutes its existence.

Neither the Supreme Court nor this Court has ever been willing to find the "spectre" of judicial manipulation or bias, without more, to be sufficient to establish a due process violation. GCR 1963, 405.1(3), (8); GCR 1963, 912.2(2), (7), *Crowley, Milner & Co v Macomb Circuit Judge,* 239 Mich 605, 613; 215 NW 29 (1927), *Kolowich v Ferguson,* 264 Mich 668; 250 NW 875 (1933), *People v Moran,* 36 Mich App 730, 734; 194 NW2d 555 (1971), *People v Lobsinger,* 64 Mich App 284; 235 NW2d 761 (1975). As this Court observed in *Irish v Irish,* 59 Mich App 635, 639; 229 NW2d 874 (1975):

"In *Wayne County Prosecutor v Doerfler,* 14 Mich App 428, 441; 165 NW2d 648 (1968), we discussed the question of disqualification of a judge and formulated the following standard for interpretation of the court rule:

'An appellate court must demand actual proof of claimed prejudice when reviewing the nonjudicial activities of a judge, and when none is forthcoming that court must find that no violation of due process has occurred. The language of GCR 1963, 405.1(8), apparently a catch-all phrase, still requires some actual showing of prejudice and it will not encompass the unfounded fears of defendants.'

"While the above-quoted statement was made in reference to the nonjudicial activities of a judge, we feel that it is equally applicable to a case such as this where the judicial activities of a judge are involved. Actual proof of prejudice must be presented before a trial judge will be disqualified."

Unsupported speculation and conjecture regarding judicial impropriety is not appropriate at any stage of appellate review. See *People v Irwin,* 47 Mich App 608, 610; 209 NW2d 718 (1973).

Neither do we find convincing the emphasis placed below on the failure of the supervising judge to make a record of his voir dire of the individual prospective jurors. We do not find an obligation to make such a record in order to provide fodder for an otherwise prohibited skirmish. In light of the testimony of Judge Harrison quoted above and the fact that there is no allegation of bad faith on his part, there was no basis for challenging the array on the grounds of purposeful discrimination in selection. Hence, a record of the voir dire, if made, could only be used in the present case to attack individual grand jurors on the grounds of bias or prejudice. This an accused may not do, for an accused has no right to subject a grand jury or grand jurors to a voir dire. *Commonwealth v Dessus,* 423 Pa 177; 224 A2d 188 (1966), *Estes v United States,* 355 F2d 609 (CA 5, 1964). As stated in *United States v Knowles,* 147 F Supp 19, 20–21 (D DC, 1957):

"Challenges for bias or for any cause other than lack of legal qualifications, are unknown as concerns grand jurors. No provision is made for peremptory challenges of grand jurors and no such challenges are permitted. Likewise no *voir dire* examination exists in respect to grand jurors. In other words, the status of a member of a grand jury may not be questioned except for lack of legal qualifications."

We will not permit the defendants to do indirectly, through the voir dire of Judge Harrison, what they may not do directly, that is, challenge grand jurors for bias or prejudice.

We hold that the participation of the supervising judge in the selection and impaneling of the Ingham County Citizens' Grand Jury did not constitute a due process violation. The circuit court erred in requiring that the 50 names be dropped into a box and extracted therefrom randomly and blindly as an element of constitutional due process. The Legislature could, if it so desires, clarify the language of § 1326 and incorporate the petit jury blind draw system outlined in GCR 1963, 511.1 or it could proscribe voir dire examination by a supervising circuit judge. In the absence of a legislative mandate, however, the lower court should not have imposed such requirements.

We therefore reverse the order of the circuit court quashing the defendants' indictment.

## Jury Board Qualification

In addition to the challenges to judicial participation in the selection of the grand jury, the defendants raised other questions in the circuit court regarding qualifications of the Board and the source of the grand jury array. We now turn to those questions.

The defendants assert that the failure of two members of the Board to take the oath of office upon reappointment, as required by MCL 600.1303a; MSA 27A.1303(1), voids the Board's initial selection of the petit jury panels. The prosecutor, on the other hand, contends that the defective constitution of the Board represents merely a technical defect of the sort entitled to protection from challenge under the provisions of §§ 13 and 14 of Chapter VII of the Code of Criminal Procedure, MCL 767.13 and 767.14; MSA 28.953 and 28.954. We believe the point is well taken. Those provisions read:

"Sec. 13. A person held to answer to any criminal charge may object to the competency of anyone summoned to serve as a grand juror, on the ground that he is the prosecutor or complainant upon any charge against such person; and if such objection be established, the person so summoned shall be set aside."

"Sec. 14. No challenge to the array of grand jurors, or to any person summoned as a grand juror, shall be allowed in any other case than that specified in the preceding section."

The prosecutor had the best of this issue below. Judge Hotchkiss held that the failure of two members of the Board to take the oath of office before the presiding judge upon reappointment constituted a technical defect, protected from challenge by §§ 13 and 14. We agree with the circuit court.

Case law interpreting the quoted statutes evidences a long history of prohibiting challenges such as defendants seek to assert in the present case. In *People v Lauder,* 82 Mich 109; 46 NW 956 (1890), defendant was indicted by a grand jury and contended that defects in the selection process necessitated that the indictment be quashed. The Court rejected defendant's contention, citing the above statutes and stating, at pages 134–135:[2]

"It was evidently intended by the Legislature that no mere technicalities or irregularities should be permitted to quash the grand-jury panel, and that only in case of a prosecutor or complaining witness being summoned could the accused person successfully complain and exercise the right of challenge.

\* \* \*

"I am satisfied that the Legislature has wisely ordained that no inquiry for the purpose of quashing an

[2] While the quoted portion is taken from the dissent, all the justices concurred in it. *See People v Reigel,* 120 Mich 78, 86; 78 NW 1017 (1899).

indictment shall be made into the composition of a grand jury, or as to the competency of the individual jurors, except in cases where some member has been the prosecutor of, or the complaining witness against, the person indicted. It must be remembered that the grand jury does not settle the guilt or innocence of the accused, but acts something the same as does an examining magistrate. No irregularities in the examination of an accused person before a magistrate are permitted to quash an information filed in the circuit court against him, and based upon such examination. The admission of incompetent evidence, or the rejection of proper testimony, by the justice of the peace, or other person holding such examination, has no effect upon the information. This proceeding to find an indictment before a grand jury, or to bind an accused person over to the circuit court by a justice of the peace, is but the presentment of a case to be tried before a petit jury, and the proceeding is not to be governed by any mere technicalities, as long as the substantial rights of the accused to a speedy and fair trial before a jury of his peers is preserved and remain to him."

The *Lauder* rationale was affirmed in *People v Smith,* 118 Mich 73; 76 NW 124 (1898), where the Court stated:

"The statute is conclusive of the first question. The objections relate to irregularities in the drawing of the jury. The statute specifies what shall be a ground of challenge, viz., that a juror is prosecutor or complainant. It expressly prohibits a challenge on any other ground. 2 How. Stat. §§ 9496, 9497. The question is discussed by Mr. Justice Morse in *People v Lauder,* 82 Mich [109] 133, authorities cited, and statute quoted. An objection prohibited by the statute when the grand jury is impaneled cannot be valid when the party is put to trial under the indictment found. There was no fraud or willful disregard of the law, or even an indication that competent jurors were not secured, or that respondent was prejudiced."

The *Smith* and *Lauder* holdings have been consistently interpreted to bar challenges to the selection of grand juries. *People v Reigel,* 120 Mich 78; 78 NW 1017 (1899), *People v Thompson,* 122 Mich 411; 81 NW 344 (1899), *People v Morgan,* 133 Mich 550; 95 NW 542 (1903), *People v Lay,* 193 Mich 476; 160 NW 467 (1916).

Defendants in argument and briefs below relied on *People v Gratz,* 35 Mich App 42; 192 NW2d 304 (1971), for the proposition that failure to comply with statutory provisions concerning the selection of juries constitutes reversible error without any necessity for proving prejudice. We believe *Gratz* to be distinguishable as involving petit jury selection and we agree with its holding. The grand jury, however, is primarily an investigative tool and since the right to preliminary examination was afforded in *People v Duncan,* 388 Mich 489; 201 NW2d 629 (1972), the potential for constitutional due process violation in grand jury selection fades and the legislative intention to insulate the investigative aspects of the criminal justice system becomes a paramount principle.

In the present case, both board members had taken the oath of office before a deputy clerk; there is no allegation that they violated the oath. In light of the case law interpreting these sections, we are inclined to agree with the circuit court that the failure of two Board members to take the oath of office before the presiding judge upon reappointment was of a technical rather than fundamental due process nature, and accordingly, is protected from challenge by §§ 13 and 14.

## Source of Grand Jury Array

The next issue raised by the defendants is more

troublesome. The defendants argued in circuit court that § 1326 requires that the names of prospective grand jurors be "drawn in the same manner and from the same source as petit jurors"; thus, requiring random selection of the grand jury array. The circuit court, however, did not go so far; it held only that § 1326 required that a separate list of prospective grand jurors be drawn by the Board, but that the failure to do so and the consequent use of the petit jury panel for the grand jury array was also a technical defect shielded by §§ 13 and 14. Although we agree with the circuit court's result, we interpret § 1326 differently, thus obviating resort to §§ 13 and 14.

A review of the statutes providing for the drawing of jurors from the voter registration lists indicates that the Legislature intended that randomly selected panels of prospective jurors, regardless of their designation, be viewed as a "fungible" quantity to be used for either grand or petit jury purposes. We note that neither MCL 600.1308; MSA 27A.1308, which requires that the presiding judge estimate the court's anticipated juror needs, nor MCL 600.1311; MSA 27A.1311, which provides for the computation of the "key number" on the basis of the judge's estimate, nor MCL 600.1313; MSA 27A.1313, which provides for the use of questionnaires in determining juror qualifications, makes any distinction between grand and petit jurors in the performance of these functions. Indeed, § 1311(c) specifically states that the key number so derived be used throughout the entire period for which jurors are selected and it is unlikely that the Legislature intended that a key number based solely on petit juror needs be used to compile a separate list of prospective grand jurors. Furthermore, MCL 600.1312(f); MSA 27A.1312(f),

which provides for the exclusion of persons who have served on either petit or grand juries within the preceding year, treats those two categories identically, which may be some indication of a collective mental concept by the Legislature. We note further that as the panel used here was randomly selected from the voter registration lists, a grand jury array drawn from that panel would satisfy the mandate of § 1326, that it "be drawn in the same manner and from the same source as petit jurors".

Thus, the circuit court erred in interpreting § 1326 as requiring the compilation of a separate list of prospective grand jurors. We hold that MCL 600.1326; MSA 27A.1326 contemplates the use of randomly selected petit jury candidates as the source of the grand jury array.

## DISQUALIFICATION OF JUROR NO. 7

Finally, defendants challenge the grand jury proceedings on the grounds that the supervising judge failed to exclude juror No. 7.

During the course of the grand jury proceedings, it was learned that juror No. 7, the only black juror, is a cousin to four of the witnesses testifying before the grand jury. Furthermore, all are related to an Assistant Ingham County Prosecutor. Although Judge Harrison and all the members of the grand jury were informed of this relationship, grand juror No. 7 was not excluded and participated in discussions and voting leading to the indictment challenged herein.

In considering this challenge, Judge Hotchkiss stated that the relationship was suggestive of bias and that juror No. 7 should have been excluded. However, he held that, as only nine of the 17

grand jurors need concur on issuing an indictment, his participation would not have affected the outcome and, by itself, was not grounds for quashing the indictments. We agree with the result but for a different reason.

As we stated earlier, we believe the purpose of §§ 13 and 14 to be that no interest, except those defined by statute, will disqualify a member of a grand jury or vitiate an indictment returned. Accordingly, the fact that juror No. 7 was a cousin to four of the witnesses, by itself, should not operate as a disqualification. *Cruce v State,* 87 Fla 406; 100 So 264 (1924), *People v Briggs,* 50 Misc 2d 1062; 272 NYS2d 211 (1966), *Tyson v State,* 146 Tex Cr App 128; 171 SW2d 496 (1943).

The decision of the trial court quashing the defendants' indictment is reversed.

APPENDIX A.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff,        Docket No. 77-28261-FY

v

PERCY EDMOND, et al,
        Defendants.

STATEMENT OF FACTS

(1) On August 3, 1977, the Ingham County Prosecutor petitioned the Ingham County Circuit Court for the creation of Ingham County Citizens Grand Jury.

(2) On August 5, 1977, the Honorable Jack W.

Warren, issued an Order for the summoning of a Grand Jury.

(3) The Honorable Michael G. Harrison was selected by a blind draw to be the supervising judge of the grand jury (Tr. p 152) and was assigned to select the grand jury. (Tr. p 105).

(4) The Ingham County Jury Board was never served with a copy of either of the above described Orders, nor ever notified or informed of their existence. (Tr. p 11, pp 44–45, pp 76–79). The Citizens Grand Jury was never summoned according to the Orders of the Court.

(5) The Ingham County Jury Board was formed in 1969. The first members of the Board were Mr. Raymond Totte, Jr., Mr. Frank Perrin and Mrs. Margaret Holmes. (Tr. p 9). These persons were each reappointed to the Board when their original terms expired and they comprise the current Ingham County Jury Board. (Tr. p 75).

(6) Mr. Perrin was first appointed to the Jury Board in 1969 and was reappointed to a six year term in 1975. (Tr. p 75). Mr. Perrin took a constitutional oath of office before the presiding circuit judge each time he was appointed. (Tr. pp 75–76).

(7) Mrs. Margaret Holmes was first appointed to the Jury Board in 1969 and was reappointed in 1973. (Tr. pp 42–43). Mr. Totte was first appointed to the Jury Board for a four year term in 1969. (Tr, pp 8, 21). Mr. Totte was reappointed to the Jury Board for a six year term in 1971 and in May, 1977. (Tr. p 21). Both stated that they had not taken a constitutional oath before the presiding circuit court judge, but had signed an oath before a Deputy Clerk.

(8) The minutes of the Board meetings were not attested to by the secretary. (Tr. p 17, pp 48–49). Minutes of the Board's meeting have been kept in

this fashion since 1969, being signed by the Board members. (Tr. p 66).

(9) The Jury Board held their annual meeting in May, 1977. (T. pp 26–27, p 51). The Board compiled the First Jury List by applying the "key number" to the voter registration lists supplied by the County Clerk. Questionnaires were sent to the persons on the First Jury List. (Tr. p 30, p 49). The Board then reviewed the questionnaires and excused those people who were exempted by statute or otherwise unqualified. (Tr. pp 30–34, p 56). A Second Jury List, comprised of those qualified to serve as jurors, was then prepared by the Board in the same manner as the First Jury List. (Tr. p 85).

(10) The Jury Board, pursuant to an order of the presiding judge drew a list of prospective jurors to serve as petit jurors for the September, October, November and December 1977 terms of the court. (Tr. pp 80–81). No separate list of persons to serve as prospective grand jurors was ever prepared by the Jury Board.

(11) On September 6, 1977, a group of approximately 50 persons were removed from the September 1977 petit jury panel (Tr. pp 99–102) and transported to Mason, Michigan, and appeared before Honorable Michael G. Harrison, Ingham County Circuit Judge, who was selected to handle the Grand Jury by the blind draw system (Tr. p 152) and to select the jurors. (Tr. pp 105–106).

(12) Over the course of the next several days (Tr. p 153) Judge Harrison personally and privately *voir dired* each of the 50 petit jurors. (Tr. p 154). This procedure was carried out without a court-reporter or stenographer (Tr. p 154) or any other person present. No record of these individual *voir dires* was made.

(13) Judge Harrison, after personally examining

the 50 or so petit jurors, personally selected, without a random or blind draw, the 17 persons who even now compose the Ingham County Citizens Grand Jury. (Tr. pp 154–155).

(14) Of the 17 petit jurors personally selected by Judge Harrison, one was of the Black race. Two other Black petit jurors (Tr. p 153, p 159, p 160) were excluded.

(15) On September 23, 1977, it was learned that juror number seven (7), the only black juror selected to sit on the Ingham County Citizens Grand Jury (Tr. p 213) was related to George Andrew Thomas, Jr., "Junebug", a witness before the Ingham County Citizens Grand Jury. (Tr. p 208, p 209, p 216). After so learning the Prosecutor and assistant prosecutor John E. Steele met with Judge Harrison and advised him of the relationship. (Tr. p 217). The Black grand juror was not excused. (Tr. p 160).

(16) All of the four persons named Thomas are related to each other as brother and sister (Tr. p 228), each is therefore related to Grand Juror number seven (7) as a cousin, and it would appear are all related to an assistant Ingham County Prosecutor. (Tr. p 232).

(17) Additionally, Grand Juror number seven (7), although being absent during the testimony of George A. Thomas, Jr., and Claude Sterling Thomas, not only read the transcripts of their testimony, but also participated in the discussions leading to the indictment of December 15, 1977, and the vote taken thereon. (Tr. p 193). George A. Thomas, Jr., "Junebug", and Claude Sterling Thomas, "May May", were vound to be co-conspirators but were not indicted; Pearl Thomas and Terri Thomas were not found to be co-conspirators. (See Indictment).

(18) All members of the Ingham County Citizens Grand Jury who were present at the September 28, 1977 session at which the testimony of George A. Thomas, Jr., and Claude Sterling Thomas was taken, were advised on the record of the relationship between the aforenamed parties. (Tr. p 207, p 208).